## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| MARJORIE MEYERS, by Next Friend<br>EDGAR C. BENZING, HELEN ELKIN,<br>RUTH H. DAVIS, and PHILLIP<br>GREENBERG, on behalf of themselves<br>and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>STATE OF TEXAS, DEPARTMENT<br>OF TRANSPORTATION, and<br>AMADEO SAENZ, JR., in his capacity<br>as Executive Director of the Texas<br>Department of Transportation;<br><br>        Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 00 CA 430 SS |

## SETTLEMENT AGREEMENT

This Settlement Agreement, entered into between the State of Texas, and the State of Texas Department of Transportation (hereinafter collectively referred to as "State") and class representatives Helen Elkin, John D. Hodges, John C. Hart, and Richard Gravett (hereinafter "Representative Plaintiffs") on behalf of themselves and all others similarly situated (hereinafter "Plaintiffs" or "Class Members").

### I.    Introduction

Representative Plaintiffs purchased accessible parking placards ("Placards") as issued by the State of Texas.  Placards are issued to and on behalf of persons with mobility impairments sufficiently serious as to entitle them to use parking places



EXHIBIT

A

reserved for persons with disabilities.   See Tex. Rev. Stat. 6675a-5e.1, *et seq.*
(Recodified at Tex. Transp. Code §502.253, 681.001, *et seq.*.)  At the time this lawsuit
was commenced in 1997, the State required the payment of a $5.00 fee for a five year
Placard.  Placards are renewable every five years.

## II.  Procedural History

Representative Plaintiffs filed suit challenging the Placard fee requirement in state
court.  In September of 1997, the State removed the case to the United States District
Court for the Western District of Texas. The federal court then *sua sponte* remanded the
action to state court on the ground that the Placard fee is a state tax, and that federal
jurisdiction was therefore barred by the Tax Injunction Act, 28 U.S.C § 1341.

Back in state court, class certification was granted, and the State's claim that the
case was barred by sovereign immunity was rejected by the state trial court.  The State
appealed these rulings to Texas' Third District Court of Appeals, where the case was
briefed and oral argument scheduled. Before oral argument, on July 17, 2000, the State
again removed the case to federal court.  The basis asserted for the second removal was
generally a ruling by the Fifth Circuit Court of Appeals in a separate lawsuit that the
Placard fee is not a tax.

Upon removal, State moved to dismiss Plaintiffs' claims as barred by the Eleventh
Amendment to the Constitution of the United States.  Plaintiffs moved for remand,
arguing State's second removal of a previously removed and remanded case, over three
years after suit was filed based on events external to the litigation, was improper.  On
April 16, 2001, the Federal District Court granted State's motion to dismiss.

On May 19, 2005, the Fifth Circuit Court of Appeals reversed, relying on the holding in Lapides v. Bd. of Regents, 535 U.S. 613 (2002), that Eleventh Amendment immunity from suit in federal court is waived by a state's decision to remove. The Fifth Circuit Court of Appeals rejected the State's argument that Lapides, should be narrowly limited to state law claims for which the state has waived its immunity.

In September, 2006, the State filed a Petition for Writ of Certiorari in the Supreme Court of the United States. State was able to gather *amici curiae* support from the Commonwealth of Virginia, 27 other states, and the Territory of Puerto Rico. The United States, through its Solicitor General, joined by the Attorney General and the Department of Justice, opposed the Defendants' Petition for Writ of Certiorari. On April 30, 2007, the United States Supreme Court denied the State's Petition for Writ of Certiorari in *Texas, et al., v. Meyers, Marjorie, et al.,* No. 06-642. On July 7, 2008, Judge Sparks entered an Order (hereinafter "Order") granting Plaintiffs' Motion for Summary Judgment and denying Defendants' Motion for Summary Judgment. In the Court's Order the Defendant State of Texas was immediately enjoined "from requiring payment from future applicants for placards allowing the use of parking spaces reserved for persons with disabilities". Compliant with the Order, the State immediately ceased requiring the aforedescribed payment and directed the return of all payments inadvertently collected after July 7, 2008. Judge Sparks further Ordered the parties "to confer and attempt to reach agreement on the issue of calculation of damages and interest and the procedures for filing and paying claims." Through extensive dialog since September, 2008, and two (2) full days of mediation the parties have reached a

settlement of all issues, with the approvals of the appropriate parties, as detailed hereinafter.

### III. Settlement Agreement Terms and Conditions

NOW, THEREFORE, the Plaintiffs and State (collectively hereinafter referred to as "Parties") hereto stipulate this litigation is being compromised and settled pursuant to the recitals in the Introduction and Procedural History set forth hereinabove and pursuant to the terms and conditions set forth hereinafter in this settlement agreement (hereinafter referred to as "Settlement Agreement" or "Agreement"):

1.    **Consideration.**    The foregoing statements are true and correct.    The consideration for this Agreement is the mutual promises contained herein.

2.    **Execution and Joinder.**    Amadeo Saenz, Jr., in his official capacity as Executive Director of the Texas Department of Transportation, on behalf of the Texas Department of Transportation, and on behalf of the State of Texas, by the execution hereof consent to:  1) the terms and conditions contained herein; and 2) position as party defendants in this action.

Helen Elkin, John D. Hodges, John C. Hart, and Richard Gravett as Representative Plaintiffs, on behalf of themselves and all others similarly situated, by the execution hereof consent to: 1) the terms and conditions contained herein; and 2) position as Representative Plaintiffs in this action.

3.    **Benefits of Settlement to Class Members.**    The Representative Plaintiffs and the attorneys for the Plaintiffs (hereinafter referred to as "Class Counsel") recognize: a) the expense and duration of continued litigation and the difficulties and delays related

thereto; b) the uncertainty of the outcome of further litigation; c) the primary objective of this action as being declaratory and injunctive relief, the State's cessation of charges for Placards on July 7, 2008, and the objective of this action to secure a refund of fees paid for Placards by Class Members. Representative Plaintiffs and Class Counsel have thoroughly considered the developing decisional authorities and the well reasoned arguments made by the State, both in court and in settlement discussions. Based on the foregoing, the Representative Plaintiffs and Class Counsel have determined the Settlement Agreement set forth herein is fair, reasonable and adequate and in the best interest of Class Members. Plaintiffs continue to believe strongly in their position.

4. **Benefits of Settlement to State.** The State recognizes a) the expense and duration of continued litigation and the difficulties and delays related thereto; b) the uncertainty of the outcome of further litigation; c) the primary objective of this action as being declaratory and injunctive relief, the State's cessation of charges for Placards on July 7, 2008, and the objective of this action to secure a refund of fees paid for Placards by Class Members. Based on the foregoing, the State has determined the settlement set forth herein is fair, reasonable and adequate and in the best interest of State. However, this settlement does not constitute an admission of liability on behalf of the State or its agents, servants, employees, attorneys, or representatives, both individually and in their official capacities.

5. **Settlement Does Not Admit Liability.** Nothing contained herein shall be considered as an admission by either party.

6.    **Class Certification.** For purposes of this Settlement Agreement, the parties concur with, and stipulate to, the Rule 23(b)(2) certification of the Plaintiff class as set forth in Order as follows:

> All purchasers of disabled parking placards for persons with permanent disabilities, pursuant to Tex. Rev. Stat. art. 667a-5E.1 et seq. (recodified at Tex. Transp. Code §§502.253, 681.001 et seq.) since August 11, 1995, and all persons who will in the future be required to pay money for such placards until and unless declaratory and injunctive relief protects against the requirement of payment as a condition of access to parking accommodations reserved for persons with disabilities.

7.    **Effective Date and Required Approvals.** This Settlement Agreement shall not be binding and valid against the State until it has been approved for funding by the legislature in a manner and through a procedure the State deems appropriate. The Parties recognize that the Settlement Fund established herein, and defined hereinafter, is dependent upon legislative appropriation and is dependent upon approval of the appropriate State entities before payment. If such approvals are not obtained within the timeframe provided in this agreement, the Parties may proceed as they deem appropriate and either party shall have the right to resume litigation.

8.    **Termination of Charges for Placards.** The Federal District Court ruled in favor of the Plaintiffs on July 7, 2008, enjoining collection of placard fees. State agrees it will not collect fees for original, renewal or replacement placards allowing use of accessible parking by persons with permanent disabilities and that State shall be enjoined from imposing or collecting the same or similar fee in the future.

9.    **The Settlement Fund.**

A.    <u>The Fund</u>.  The class shall have and recover from State the sum of $20,200,816.19 as full and complete settlement and the fund is for all damages, costs, and expenses and any and all administrative fees and administrative costs, litigation costs and litigation expenses, and any other expenses, without limitation, in administering the fund or the class action or giving notice to claimants (hereinafter "The Settlement Fund").

The Settlement Fund shall cover all reimbursements to Class Members, all litigation costs and expenses, all administrative costs and administrative fees, and all expenses for the class action (see above).  The Settlement Fund does not include attorneys' fees and no part of the Settlement Fund shall be paid for attorneys' fees.  The State has agreed to pay Plaintiffs attorneys' fees in an amount awarded by the Court, but not greater than $3,900,000.00 as set forth in greater detail at paragraph 23 below.

B.    <u>Delivery of Monies</u>.  Within 30 days of the preliminary approval of this Settlement Agreement by the Court, State shall deliver the sum of $20,200,816.19 to Class Counsel or directly to "The Settlement Fund" bank account as established by Class Counsel.  (hereinafter "Fund Account")

10.    **Notice to Class Members.**

A.    <u>Background</u>.  Geographically the State of Texas consists of 254 counties.  From County to County there exists no uniform, systematic or consistent means of creating records nor retaining records of Placard purchasers.  Of the 254 Counties surveyed by State, differences exist as to the length of time records are kept ranging from 2 years or less in the Counties of Hays, Edwards, Brooks, Deaf Smith,

Gray, King, Lynn, Rodell, Oldham and Wilson, to an indefinite period of time in the Counties of Anderson, Andrews, Bailey, Baylor, Camp, Carson and others. Some counties never created or kept records at all, but followed the practice of selling Placards to persons who presented doctors' notes, without any record being made. Approximately 54 of the 254 counties have Placard records in an electronic format while all of the other counties have no electronic records of Placard purchasers. Of those counties with electronic database records the format of each is not consistent with each other, thus various and different mediums are involved. An inventory of the records available at each county is at Exhibit "A" attached hereto and made a part hereof. Of the 200 Counties that have no electronic records of Placard purchasers most, if not all, keep manual or paper records of Placard purchasers with said records consisting of a non-formatted unassembled inventory of Placard purchasers. Typically these non-electronic records are kept in boxes and consist of a copy of a handwritten Placard application incapable of scanning to a database format with any reliable, consistent or predictable degree of accuracy in the electronic transformation from the handwritten document to an electronic format.

The Parties concur that the non-electronic records are inadequate to identify Class Members through reasonable efforts as contemplated by Rule 23(b)(3) of the Federal Rules of Civil Procedure and further remain mindful this class is certified pursuant to Rule 23(b)2. However, the Parties agree said non-electronic records may serve as a tool to spot check claims filed or to otherwise verify entitlement of claims filed, provided a minimum amount of information is provided by the claimant.

B. <u>Notice to Class Members</u>.   Upon approval of funding for this Settlement Agreement by the appropriate State entities and preliminary approval of this Settlement Agreement by the Court with proposed notices related hereto, Representative Plaintiffs and Class Counsel, through its designated Administrator, as hereinafter defined, shall, with monies from the Settlement Fund, cause: i) a Notice, approximately one-quarter page in size, substantially similar to the Notice attached hereto as Exhibit "B", to be published, in a newspaper of general circulation in areas of varying population of the State of Texas, which shall include, to the extent possible, not less than the following:

Amarillo Globe-News (Amarillo, Texas)
Austin American-Statesman (Austin, Texas)
Austin Chronicle (Austin, Texas)
Del Rio News-Herald (Del Rio, Texas)
Corsicana Daily Sun (Dallas-Ft. Worth, Texas)
Denton Record-Chronicle (Dallas-Ft. Worth, Texas)
Palestine Herald-Press (Dallas-Ft. Worth, Texas)
El Paso Times (El Paso, Texas)
El Nuevo Heraldo (Harlingen, Texas)
McAllen Monitor (McAllen, Texas)
La Subasta Houston (Houston, Texas)
Laredo Morning Times (Laredo, Texas)
Lubbock Avalanche-Journal (Lubbock, Texas)
Houston Chronicle (Houston, Texas)
San Antonio Express-News (San Antonio, Texas)
Fort Worth Star-Telegram (Fort Worth, Texas)
Snyder Daily News (Lubbock, Texas)
Midland Reporter-Telegram (Odessa-Midland, Texas)
Herald Democrat (Sherman, Texas)
Mt. Pleasant Daily Tribune (Mount Pleasant, Texas)
Texarkana Gazette (Texarkana, Texas)
Henderson Daily News (Tyler-Longview, Texas)
Jacksonville Daily Progress (Tyler-Longview, Texas)
Eagle (Waco, Texas)
Killeen Daily Herald (Waco, Texas)

and ii) a Notice, substantially similar to the Notice attached hereto as Exhibit "C", to be mailed to all Placard purchasers whose names and addresses are adequately listed, for such a mailing, on the electronic medium of the counties identified at Exhibit "A" as having electronic medium of such information. Plaintiffs shall have the authority to consider and determine substantially equivalent alternative means of notice in the event unexpected circumstances develop with regard to the above; and iii) a website to be set up to post case information, to allow for the submittal of claims and to provide such other service as Plaintiffs, Class Counsel and Administrator deem appropriate.

C.    Notice Dissemination Deadline. All notice required hereinabove shall be completed at least 5 days prior to the Fairness Hearing. Class Counsel shall file with the Court on or before the date of the Fairness Hearing an affidavit from the appropriate person certifying compliance with the Notice requirements stated above.

D.    Changes to Notices. The Notices proposed by the Parties as part of this Settlement Agreement are attached hereto as Exhibits "B" and "C". The proposed Notices are subject to the insertion of the appropriate dates and addresses referenced in the Notice as the Parties arrange between them and as further approved as to substantive content. The Parties are permitted to make minor substantive changes to the Notices as they agree between them without Court Order. The Plaintiffs and Class Counsel are authorized to provide additional notice, through its Administrator, as Plaintiffs and Class Counsel deem appropriate with the costs and expenses of same being paid from the Settlement Fund.

11.    **Administration.**

Plaintiffs and Class Counsel shall be responsible for administering the Settlement Fund, notice and reimbursement as contemplated in this Settlement Agreement, with all of these expenses, excluding attorneys' fees, to be paid from the Settlement Fund. For purposes of performing the Plaintiffs' and Class Counsel's administrative duties hereunder, the Parties approve the following plan:

A.    The administration and processing of the Notice, Claims Form and Reimbursement to putative Class Members will be facilitated and accomplished by Divdat, a Michigan corporation ("Administrator"). Administrator shall perform in accordance with its agreement with the Representative Plaintiffs ("Administrator Agreement"). (See copy of Administrator Agreement at Exhibit "D" attached hereto and made a part hereof.) To secure Administrator's performance, and to protect against malfeasance and misfeasance, Administrator shall, through Class Counsel, submit proof of errors and omissions insurance coverage in the amount of not less than $20,000,000.00. The Representative Plaintiffs and Class Counsel shall be named as a loss payee of said policy in their capacity as class representatives.

The State shall, within 15 days from the date of Preliminary Approval of this Settlement Agreement by the Court, assist and cooperate with Administrator to secure copies of all electronic databases available and needed for individualized notices (hereinafter "Electronic Records") and to secure such other records as may be reasonable and necessary to verify claims submitted. In no event will the State

or the counties be required to hire personnel to provide said assistance and cooperation.

Upon Administrator's receipt of Electronic Records from the Counties, Administrator shall determine how many individual mailings will be performed. Thereafter Administrator shall perform the Notice requirements as otherwise contemplated in this Settlement Agreement.

Upon the completion of the period to file a claim, Administrator shall review and consider all claims filed and prepare an electronic database of all claims filed and issue reimbursement checks to Class Members submitting valid claims. Said checks shall not exceed the amount each Class Member paid for Placards and in aggregate shall not exceed the amount in the Settlement Fund less administration costs and expenses and litigation costs and expenses. In the event the distribution results in a mathematical computation involving a fraction of a penny, then Administrator shall round down to the closest penny unless Class Counsel, in writing, authorizes, otherwise. The check for reimbursement must be preapproved by the Banking institution holding the Settlement Fund ("Depository") and in a format acceptable to the Depository. Prior to commencement of Notice and distribution of funds, Administrator shall provide Class Counsel, State counsel, and the Depository with a proof copy of the Notice and the reimbursement check for review. At a minimum the proof copy of the reimbursement check shall set forth a preprinted maximum value and an expiration date of not more than 30 days. If Class Counsel, State counsel, or

Depository does not respond to the proof copy within 10 days of receipt, the proof copy submitted by Administrator shall be deemed acceptable by the non-responding party.  On a daily basis, Administrator shall provide Depository a data source of information which indicates the number of the check issued, the name and address of the payee and the amount of the check for each check mailed on a given day.

Administrator's denial of any claim submitted must be reviewed by Class Counsel for consideration.  If Class Counsel agrees with the Administrator's denial of the claim, a letter of denial must be sent to the putative Class Member submitting the claim, unless claimant has failed to provide an appropriate address. A putative Class Member who has had a claim denied shall be deemed excluded from the class and shall not be affected by this settlement.

B.     The Parties agree to have the Court designate Omni Bank, N.A., 4328 Old Spanish Trail, Houston, Texas 77021, as the Court designated depository ("Depository") for this case, to receive the Settlement Fund to which Plaintiffs are entitled by virtue of this Settlement Agreement.

Upon the receipt of Settlement Fund the Depository shall immediately thereafter establish an account with said funds ("Fund Account").  Upon receipt of the Settlement Fund from State, Depository shall file with the Court, through Class Counsel, a statement acknowledging the receipt of the Settlement Fund and the establishment of the Fund Account. The Depository shall handle the Fund Account just like any other checking account at Depository and provide normal, customary

and agreed upon services related thereto. Depository shall perform in accordance with its agreement with Representative Plaintiffs ("Depository Agreement") and the expense thereof shall be a permitted cost of administration. With the exception of its fee, the Depository shall not release any funds from Fund Account until it has received written confirmation from Class Counsel that Administrator's errors and omissions coverage has been delivered to Class Counsel. Upon receiving the receipt of said confirmation from Class Counsel, Depository shall disburse to Administrator one-half of its charge for performing services as Administrator pursuant to the Administrator's Agreement.

C.    The parties hereto concur the placard purchase records held by each County may contain information that is not otherwise available to the public, such as social security numbers and medical information. To the extent permitted by law, all parties, and the Administrator, agree to keep confidential all information received from the Counties except the amount paid by the placard purchaser, date of placard purchase and issuing numbers for the placard. The parties will request, in conjunction with the signing of this settlement agreement, that the court enter an order mandating that the Counties release the placard purchase records to the Plaintiffs, including those that may contain personal and medical information. Additionally, any person receiving, reviewing, or utilizing such information on behalf of Plaintiff, including any employees or representatives of the Administrator, shall sign a Confidentiality Agreement as to the personal

information supplied by the Counties for those persons that purchased an applicable placard, such agreement attached as Exhibit "E".

12.    **Procedure for Objecting to or Requesting Exclusion from Class Action Settlement.**

A.    <u>Objections</u>.    Any Class Member who does not request exclusion from the class and who wishes to object to the Settlement Agreement may appear in person or through counsel, at his or her own expense, at the Fairness Hearing only if that Class Member files with the Court and serves on counsel for the parties no later than the date set by the Court, a written objection setting forth the specific grounds for the objection and copies of all documents the person desires the Court to consider.    Class Members who fail to file and serve timely written objections in this manner shall be deemed to have waived the right to object and shall be foreclosed from making any objection, whether by appeal or otherwise, to this Settlement Agreement.    Plaintiffs or State shall have the right to submit a written reply to the objections in advance of the Fairness Hearing.    If necessary, any disagreement will be resolved at the Fairness Hearing.

B.    <u>Exclusions</u>.    Class Members who wish to exclude themselves ("opt out") from the Class must submit a written statement to the Court Clerk requesting such exclusion, signed by the Class Member, and postmarked on or before a date set by the Court.    Class Members who fail to submit a valid and timely request for exclusion on or before that date shall be bound by all terms of the Settlement Agreement and Order of Dismissal entered in this Class Action

after the Settlement Agreement is finally approved by the Court. Plaintiffs and State shall have the right to file a written objection to the request to be excluded. If necessary, any disagreement will be resolved at the Fairness Hearing.

13.    **Final Approval of Settlement Agreement.**    Upon approval of this agreement by the parties and appropriate State entities and upon preliminary approval of this Settlement Agreement by the Court, the parties shall apply to the Court to schedule a Final Settlement Hearing ("Fairness Hearing"). Upon final approval of the Settlement Agreement by the Court, disbursement of the Settlement Fund, and payment of attorneys' fees as provided herein, the Court shall enter an order dismissing this case with prejudice, reserving jurisdiction to carry out the intent of this Settlement Agreement and to enforce the terms and conditions hereof.

14.    **Refund/Attorney Fee/Settlement Date.**

A.    **Refund.**

i)    **Individual.**

a)    The only way Class Members may secure a refund of fees paid for Placards purchased is to submit a claim form within thirty (30) days after the Fairness Hearing. The Parties hereto reserve the right to extend this date if the Parties agree and a reasonable basis exists to do so. Disbursement of refunds will be mailed as promptly as possible and is expected to be within 90 days after the deadline to submit a claim form. The claim form shall be in form and in content

acceptable to the Parties. The claim form is contemplated, but shall not be required, to be provided to Class Members with the Notice at Exhibit "C", will be available upon request of a potential claimant and available at the website to be established for this case.

b)    The amount of the refund will be based on the number of valid claims to be paid and the availability of funds in the Settlement Fund after the payment of all costs and expenses of administration of this settlement and costs and expenses of litigation: however refunds will not exceed the amount paid for Placards by Class Members. Refunds will not include interest. The Plaintiff representatives and Class Counsel for Plaintiffs expect Class Members filing claims will receive 85% - 100% of the amount paid for Placards.

ii)    Unclaimed Funds / *Cy Pres*

a)    The Parties recognize there likely will be some amount of unclaimed funds after disbursement of the Settlement Fund for the payment of valid claims, payment of costs and expenses of administration and payment of costs and expenses of litigation. The Parties agree the unclaimed funds resulting from the failure to file claims and from the denial of claims filed by Class Members will be split equally,

whereby one-half of said unclaimed funds shall be distributed to the State and one-half of said unclaimed funds shall be distributed to *Cy Pres* recipients as set forth hereinafter.

b)    The portion of the Settlement Fund distributed to *Cy* Pres recipients (hereinafter "Recipient") shall be referred to as "Recipient's Share."  The parties have agreed the unclaimed funds available for *Cy Pres* recipients shall be divided among the following organizations who agree to the conditions enumerated below in this paragraph.  As well if other organizations request funds up to five (5) days prior to the Fairness Hearing, the parties can include said organization if the parties so agree and same is approved by the Court.  If for any reason any of the approved organizations are not eligible to receive money from the class fund, that organization's share may be distributed upon the agreement of the parties.

Recipients

| | |
|---|---|
| Texas Access to Justice Foundation, Austin, TX | 10% |
| Advocacy, Inc., Austin, TX | 10% |
| Texas Civil Rights Project, Austin, TX | 4% |
| Texas Legal Services Center, Austin, TX | 4% |
| Texas Rio Grande Legal Aid, Weslaco, TX | 3.5% |
| Legal Hospice of Texas, Dallas, TX | 1% |
| Texas Association of Centers for Independent Living, Inc. Lubbock, TX | 12.5% |
| ABLE Center for Independent Living, Odessa, TX | 2.5% |

| | |
|---|---|
| Austin Resource Center for Ind. Living, Austin, TX | 2.5% |
| ARCIL – San Marcos, San Marcos, TX | 2.5% |
| ARCIL – Round Rock, Round Rock, TX | 2.5% |
| Coastal Bend Center for Ind. Living, Corpus Christi, TX | 2.5% |
| Coalition for Barrier Free Living/Houston Center for Independent Living | 2.5% |
| Coalition for Barrier Free Living/Brazoria County Center for Independent Living, Angleton, TX | 2.5% |
| Coalition for Barrier Free Living/Fort Bend Center for Independent Living, Sugar Land, TX | 2.5% |
| Crockett Resource Center of Ind. Living, Crockett, TX | 2.5% |
| Palestine Resource Center for Ind. Living, Palestine, TX | 2.5% |
| East Texas Center for Ind. Living, Tyler, TX | 2.5% |
| Heart of Central Texas IL, Belton, TX | 2.5% |
| Lifetime Independence for Everyone, Lubbock, TX | 2.5% |
| Not Without Us!, Abilene, TX | 2.5% |
| Panhandle Independent Living Center, Amarillo, TX | 2.5% |
| Rehabilitation, Education, & Advocacy for Citizens With Handicaps, Dallas, TX | 2.5% |
| REACH – Fort Worth, Fort Worth, TX | 2.5% |
| REACH – Denton, Denton, TX | 2.5% |
| San Antonio Independent Living Services, San Antonio, TX | 2.5% |
| Valley Association for Ind. Living, McAllen, TX | 2.5% |
| South Texas Advocacy & Accessibility Resource Services, Laredo, TX | 2.5% |
| Volar Center for Independent Living, El Paso, TX | 2.5% |

Each Recipient shall be given its portion of the Settlement Fund on condition that it agrees in writing to the following: (1) to use its share for the benefit of persons with permanent disabilities and meritorious issues related to access to public places and services, (2) to provide the parties' counsel with an accounting and a written statement detailing the manner in which the Recipient's Share will be spent (hereinafter, "Recipient's Report"), (3) to provide the Recipient's Report

to parties' counsel at intervals of six months after receipt of the Recipient's Share until such time as the Recipient's Share is fully spent, (4) to spend no more than 15% of Recipient's Share on administrative expenses, including Recipient's Report, (5) Recipient's share shall not be used for purposes of litigation against, or advocacy in connection with litigation against, the State of Texas or any agency, department or other political subdivision thereof or against any state official or employee in connection with his or her official duties, (6) if any Recipient's Report is not timely submitted, the Recipient shall not expend any remaining portion of Recipient's Share after the due date of Recipient's Report and until the State has received and approved the Recipient's Report, (7) Any portion of a Recipient's Share spent in violation of the Settlement Agreement and the written agreement with said Recipient shall be subject to imposition of a constructive trust in favor of the State, and the State shall have the right to undertake any action necessary for imposition of such constructive trust.

B.    **Distribution of Settlement Funds and Other Monies.**

    i)    Within 30 days of the preliminary approval of this Settlement Agreement by the Court, State shall deliver to Class

Counsel or directly to "The Settlement Fund" bank account as established by Class Counsel the sum of $20,200,816.19.

ii)     State shall pay attorneys' fees awarded by the Court, said amount not to exceed $3.9 million, to Class Counsel within 30 days after the Court enters an Order determining the amount of said attorneys' fees.    This determination will occur at the Fairness Hearing, and said payment of attorneys' fees will not occur until after the Fairness Hearing.

iii)     Class Counsel shall direct, through the Administrator or Depository as necessary, the payment of the unclaimed funds consistent with this Settlement Agreement 30 days after the amount due the State is determined and 30 days after receipt of a written statement from the receiving Recipient committing itself to comply with its obligation to use of *Cy Pres* funds as set out in this Settlement Agreement.

The Parties shall cooperatively file and serve a written certification from the appropriate persons or entity when all monies required to be paid hereunder have been fully distributed and paid.

15.    **Release**.  Plaintiffs and State, for themselves and their officers, directors, principals, attorneys, representatives, and employees, forever release and discharge each other from any and all claims, debts, demands, actions, suits, causes of action, damages, attorneys' fees, expenses and costs, in law or in equity, whenever or however incurred,

whether known or unknown, that relate in any way to any acts, omissions, or conduct of any nature whatsoever that arose out of the subject matter of this dispute or the action, and that occurred prior to the execution of this Settlement Agreement. This release shall extend, as to Representative Plaintiffs, HELEN ELKIN, JOHN D. HODGES, JOHN C. HART, and RICHARD GRAVETT, for and on behalf of themselves and their past, present, and future heirs, personal representatives, executors, trustees, administrators, agents, servants, attorneys, insurers, reinsurers, representatives, predecessors and successors in interest, assigns, and any other successors or interested parties, and as to State, and their past, present, and future officers, directors, attorneys, insurers, reinsurers, agents, employees, subsidiaries, affiliates, predecessors, successors in interest, officials, and any other successors or interested parties.

As of the date this Settlement Agreement is approved in finality, all Class Members, who have not validly and timely requested exclusion, or who are otherwise deemed excluded pursuant to the terms hereof, release State, its employees, agents, attorneys, executives, officials, Department Representatives, successors, and predecessors in interest, from any and all claims, debts, obligations, causes of action and liabilities that are asserted in the Complaint or that may be based on the claim that State improperly or illegally charged Placard fees. It is agreed between the Parties that the aforementioned Release is limited to claims arising from State's past actions of charging for Placards or that may be based on the claim that the State improperly or illegally charged for Placards fees related to said claims, and not with respect to any claims based upon any future charges for Placards.

16.   **Warranties And Representations**.    Class Members through the Representative Plaintiffs represent and warrant they are the sole owner of all claims purported to be released hereby, and they have not assigned or transferred any claim arising from or related to the Litigation to any third party.   Further, Class Members through Representative Plaintiffs represent and warrant that no third party has been subrogated to its interest in claims purported to be released hereby, or if any third party has been subrogated to Class Members' interest, the interest of any subrogee has been settled, compromised, and extinguished.

17.   **Integration**.   This Settlement Agreement constitutes the entire agreement of the Parties regarding the subject matter hereof.   The terms of this Settlement Agreement are contractual in nature and not mere recitals.   As such, the Parties understand, acknowledge and agree that this Settlement Agreement is fully integrated and supersedes all previous oral or written agreements of the Parties.

18.   **Binding Effect**.   This Agreement shall inure to the benefit of, and be binding upon, the heirs, successors, assigns and legal representatives of the Parties and any third party beneficiaries.

19.   **Governing Law**.   This Agreement is entered into in the State of Texas, and shall be governed by federal and state law applicable in the State of Texas.

20.   **Nullification of Settlement Agreement/Exhaustion of Appeals.**   In the event the Court enters a final order that is not consistent with this Settlement Agreement, in that such inconsistency creates a material burden to either party, then the burdened

party may seek appellate review to the extent provided by law. If the order is affirmed or no appeal taken, either Party may accept the burden imposed and this Settlement Agreement shall remain in full force and effect, otherwise the burdened party may declare this Agreement null and void and resume litigation.

In the event the Settlement Agreement is rejected by the Court in its entirety, the Parties hereto agree to remain bound and obligated to the terms and conditions hereof until all opportunities to appeal have been exhausted.

21.    **Fairness, Adequacy and Reasonableness of Settlement Agreement.** The Parties and their counsel believe the Settlement Agreement is fair, adequate, and reasonable and have arrived at this settlement in an arms length negotiation, utilizing the services of professional mediator Alice Oliver-Parrott and taking into account all relevant factors, present and potential.

22.    **Cooperation and Drafting.** For the purposes of construing or interpreting this Settlement Agreement, each of the parties has cooperated in the drafting and preparation of it.

23.    **Attorneys' Fees.** The Plaintiffs, through Class Counsel, shall make application to the Court for an award of reasonable attorneys' fees, costs and expenses with supporting affidavits and memorandum as Plaintiffs and Class Counsel deem appropriate for consideration by the Court at the Fairness Hearing. The Parties agree to settle all claims by Plaintiffs against State for attorneys' fees and litigation expenses incurred by Class Counsel and themselves during the pendency of this litigation from its inception to the present and which may be incurred or claimed in the future on the

following terms: the State agrees to pay the Plaintiff Class Counsel three million nine hundred thousand ($3,900,000.00) dollars in full settlement of all claims for attorneys' fees claimed in this litigation and State further agrees not to object to the application for same. The attorneys' fees shall not be paid from the Settlement Fund. The Plaintiffs and Class Counsel agree to accept the settlement amount in full satisfaction of all claims for attorneys' fees incurred during the pendency of this litigation accruing or claimed at any time. Costs and litigation expenses shall be subject to the approval of the Court at the Fairness Hearing and within 30 days of the Court's award shall be paid from the Settlement Fund.

24. **Headings**. The headings used in this Settlement Agreement are for the convenience of the parties only. As such, these headings shall not have any legal effect whatsoever or, in any other way alter or modify the meaning or interpretation of this Settlement Agreement.

25. **Execution In Counterparts**. This Settlement Agreement may be executed in counterparts, each of which shall have full force and effect upon execution by all parties to this Settlement Agreement.

26. **Adequate Consideration**. The Parties agree, covenant, represent, and warrant there is sufficient and adequate consideration being received and fair value being provided by the Parties for entering into this Settlement Agreement, and that this Settlement Agreement is being entered into knowingly, voluntarily, without mental reservation, with no purpose of evasion, and with the intent to be legally bound hereby, without coercion of any kind, in part to remove the uncertainty and expenses of

additional negotiations and future litigation, and with an adequate opportunity for and the actual benefit of the assistance and advice of legal counsel.

27.    **Waiver and Amendment.**  No breach of any provision of this Settlement Agreement can be waived unless done in writing.  Waiver of any one breach shall not be deemed a waiver of any other breach of the same or other provisions of this Settlement Agreement.  This Settlement Agreement may be amended only by written agreement executed by all of the Parties.

28.    **Change in Law or Facts.**  The Parties expressly assume any and all risks that the facts and law may be different from the facts and law as known to, or believed to be, by each such party as of the date of this Settlement Agreement, and agree and understand that this Settlement Agreement shall be effective and enforceable according to its terms even if the facts and/or law turn out to be different than each party hereto knows or believes them to be as of the date hereof.

29.    **Signatures.**  The signatories below declare, warrant and represent that they have the authority to enter into this Settlement Agreement on behalf of their respective party to the extent of the terms herein.

Date: _Oct. 2, 2009_

Representative Plaintiff, John D. Hodges

Date: _Oct. 2, 2009_

Representative Plaintiff, John C. Hart

Date: _Oct 2, 2009_

Representative Plaintiff, Richard Gravett

Date: *Oct. 2, 2009*

Class Counsel:
**ROBERT G. FEGERS, P.L.**

By: _____

Robert G. Fegers
Florida Bar No. 0379719
Post Office Box 7692
Winter Haven, Florida 33883-7692
Telephone (863) 294-3600

**PETERSON & MYERS, P.A.**

Stephen R. Senn
Florida Bar No. 0833878
J. Davis Connor
Florida Bar No. 714313
Post Office Box 24628
Lakeland, Florida 33802-4628
Telephone: 863-683-6511

**SKELTON & WOODY**

J. Hampton Skelton, Esquire
State Bar No. 18457700
P.O. Box 1609
Austin, Texas 78767-1609
Telephone: 512-651-7000
Facsimile: 512-651-7001

**LEWIS SAUL & ASSOCIATES P.C.**

Lewis J. Saul
Jon Hinck
183 Middle Street, Suite 200
Portland, ME 04101
Tel: (207) 874-7407

Legal review for Texas Department of Transportation:

Date: 10/1/09

By: *Walter C. Brocato*

    Walter C. Brocato, Esquire
    Assistant Attorney General of Texas
    Texas Bar No. 03039050
    Attorney-in-Charge
    Transportation Division
    Post Office Box 12548
    Austin, Texas 78711-2548
    Attorneys for Defendants,
    The State of Texas
    Texas Department of Transportation

Date: 10/1/09

By: *Amadeo Saenz*

    Amadeo Saenz, Jr.
    Executive Director of the Texas
    Department of Transportation

    State of Texas

| CO# | COUNTY | Manual Process (no database or dual system) | | Database/Electronic Process (some maintain a dual system) | | | | |
|---|---|---|---|---|---|---|---|---|
| | | VTR-214 Retention* | VTR-214 Filed By | Database Y / N | Electronic Retention | VTR-214 Retention** | Information Captured | Share Database |
| 1 | ANDERSON | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 2 | ANDREWS | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 3 | ANGELINA | N/A | N/A | Yes | Indefinitely | Indefinitely | Disabled Person Applicant Address Placard Number(s) DL / ID VTR-214 Scanned | Yes |
| 4 | ARANSAS | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 5 | ARCHER | Indefinitely | Disabled Person | N/A. | N/A | N/A | N/A | N/A |
| 6 | ARMSTRONG | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 7 | ATASCOSA | 15+ Yrs | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 8 | AUSTIN | 15 Yrs (1993) | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 9 | BAILEY | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 10 | BANDERA | 5 Yrs | Applicant | Yes | 5 Yrs | 5 Yrs | Disabled Person Placard Number(s) | Yes |
| 11 | BASTROP | N/A | N/A | Yes | 14 Yrs (1994) | Indefinitely | Disabled Person Applicant Address Placard Number(s) DL / ID | Yes |

EXHIBIT "A"

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12 | BAYLOR | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 13 | BEE | N/A | N/A | Yes | 5 - 6 Yrs | Indefinitely | Disabled Person Placard Number(s) License Plate Number | Yes |
| 14 | BELL | N/A | N/A | Yes | Long Time (?) | Indefinitely (?) | Disabled Person Applicant Address Placard Number(s) VTR-214 Scanned | Yes |
| 15 | BEXAR | 10+ Yrs | Disabled Person | N/A | N/A | N/A | N/A |
| 16 | BLANCO | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 17 | BORDEN | Indefinitely | Date Issued Not Sorted | N/A | N/A | N/A | N/A |
| 18 | BOSQUE | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 19 | BOWIE | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 20 | BRAZORIA | Indefinitely | Disabled Person Placard Number(s) | Yes | 10 Yrs | Indefinitely | Disabled Person Applicant Address Placard Number(s) | Yes |
| 21 | BRAZOS | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 22 | BREWSTER | 5 Yrs (2003) | Disabled Person | N/A | N/A | N/A | N/A |
| 23 | BRISCOE | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 24 | BROOKS | N/A | N/A | Yes | 2 Yrs | 1 Yr | Disabled Person Placard Number(s) Date Issued | Yes |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 25 | BROWN | Indefinitely | Applicant | N/A | N/A | N/A | N/A |
| 26 | BURLESON | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 27 | BURNET | 11 Yrs (1997) | Disabled Person | N/A | N/A | N/A | N/A |
| 28 | CALDWELL | 10+ Yrs | Applicant | N/A | N/A | N/A | N/A |
| 29 | CALHOUN | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 30 | CALLAHAN | Indefinitely | Applicant | N/A | N/A | N/A | N/A |
| 31 | CAMERON | N/A | N/A | Yes | 10 Yrs | 10 Yrs | Applicant | Yes |
| 32 | CAMP | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 33 | CARSON | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 34 | CASS | Indefinitely | Applicant | N/A | N/A | N/A | N/A |
| 35 | CASTRO | 19 Yrs (1989) | Disabled Person | N/A | N/A | N/A | N/A |
| 36 | CHAMBERS | 15+ Yrs. (1990s) | Disabled Person | N/A | N/A | N/A | N/A |
| 37 | CHEROKEE | N/A | N/A | Yes | Indefinitely | Indefinitely | Disabled Person / Applicant / Address / Placard Number(s) / DL / ID / VTR-214 Scanned | Yes |
| 38 | CHILDRESS | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 39 | CLAY | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 40 | COCHRAN | 10 Yrs | Disabled Person | N/A | N/A | N/A | N/A |

| # | County | | | | | | |
|---|---|---|---|---|---|---|---|
| 41 | COKE | Indefinitely | Applicant | N/A | N/A | N/A | N/A |
| 42 | COLEMAN | Indefinitely | Applicant | N/A | N/A | N/A | N/A |
| 43 | COLLIN | N/A | N/A | Yes | 8 Yrs | 5 Yrs (95 - 00) | Disabled Person Placard Number(s) | Yes |
| 44 | COLLINGSWORTH | 4 Yrs (2004) | Disabled Person | N/A | N/A | N/A | N/A |
| 45 | COLORADO | 12+ Yrs | Applicant | N/A | N/A | N/A | N/A |
| 46 | COMAL | N/A | N/A | Yes | 8 Yrs (2000) | 4 Yrs | Disabled Person Applicant Placard Number(s) DL / ID License Plate Number | Yes |
| 47 | COMANCHE | Indefinitely | Applicant | N/A | N/A | N/A | N/A |
| 48 | CONCHO | Indefinitely | Date Issued | N/A | N/A | N/A | N/A |
| 49 | COOKE | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 50 | CORYELL | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 51 | COTTLE | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 52 | CRANE | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 53 | CROCKETT | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 54 | CROSBY | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 55 | CULBERSON | 10 Yrs | Disabled Person | N/A | N/A | N/A | N/A |
| 56 | DALLAM | Indefinitely | Applicant | N/A | N/A | N/A | N/A |

| # | County | | | | | | | |
|---|--------|---|---|---|---|---|---|---|
| 57 | DALLAS | 5 Yrs (03 - 08) | Substation | Yes | 3 Months (Jan - Mar 2008, currently scanning into database) | No Retention | Disabled Person Placard Number(s) License Plate Number | Yes |
| 58 | DAWSON | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 59 | DEAF SMITH | Indefinitely | yes | N/A | 2 Yrs | Indefinitely | Disabled Person | Yes |
| 60 | DELTA | 3 Yrs | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 61 | DENTON | 16 Yrs (1992) | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 62 | DEWITT | N/A | N/A | Yes | Current Issuance | 8 Yrs (2000) | Applicant Placard Number(s) Date Issued DL / ID | NO |
| 63 | DICKENS | 10 - 12 Yrs | Disabled Person | N/A | N/A | N/A | | N/A |
| 64 | DIMMIT | 20 Yrs | Applicant | Yes | 20 Yrs | 20 Yrs | Disabled Person Applicant Address | Yes |
| 65 | DONLEY | 20+ Yrs (1986) | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 66 | DUVAL | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 6 | EASTLAND | Indefinitely | Placard Number(s) | N/A | N/A | N/A | N/A | N/A |
| 68 | ECTOR | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 69 | EDWARDS | 1+ Yr | Disabled Person Date Issued | N/A | N/A | N/A | N/A | N/A |

| | | | | | | |
|---|---|---|---|---|---|---|
| 70 | ELLIS | Indefinitely | Disabled Person | N/A | N/A | N/A |
| 71 | EL PASO | N/A | N/A | Yes | 19 Yrs (1989) | 19 Yrs (1989) |
| 72 | ERATH | Indefinitely | Disabled Person | N/A | N/A | N/A |
| 73 | FALLS | Indefinitely | Disabled Person | N/A | N/A | N/A |
| 74 | FANNIN | 8+ Yrs | Disabled Person | N/A | N/A | N/A |
| 75 | FAYETTE | 5 Yrs | Disabled Person | N/A | N/A | N/A |
| 76 | FISHER | Indefinitely | Applicant | N/A | N/A | N/A |
| 77 | FLOYD | 10+ Yrs | Disabled Person | N/A | N/A | N/A |
| 78 | FOARD | Indefinitely | Not Sorted | N/A | N/A | N/A |
| 79 | FORT BEND | N/A | N/A | Yes | 13 Yrs | 13 Yrs |
| 80 | FRANKLIN | Indefinitely | Disabled Person | N/A | N/A | N/A |
| 81 | FREESTONE | Indefinitely | Disabled Person | N/A | N/A | N/A |
| 82 | FRIO | 4 Yrs | Disabled Person | Yes | 4 Yrs | 4 Yrs |
| 83 | GAINES | N/A | N/A | Yes | 3 Yrs | 15 - 20 Yrs |

Column headers (as labeled in source):
- Disabled Person Applicant Address Placard Number(s)
- Disabled Person Applicant Placard Number(s)
- Disabled Person Placard Number(s) Date Issued

Final column values (Yes/N/A):
- 70 ELLIS: N/A
- 71 EL PASO: Yes
- 72 ERATH: N/A
- 73 FALLS: N/A
- 74 FANNIN: N/A
- 75 FAYETTE: N/A
- 76 FISHER: N/A
- 77 FLOYD: N/A
- 78 FOARD: N/A
- 79 FORT BEND: Yes
- 80 FRANKLIN: N/A
- 81 FREESTONE: N/A
- 82 FRIO: Yes
- 83 GAINES: Yes

| # | County | | | | | | | |
|---|--------|---|---|---|---|---|---|---|
| 84 | GALVESTON | N/A | N/A | Yes | 6 Yrs (2002) | 5 Yrs | Disabled Person / Applicant / Address / Placard Number(s) / Date Issued | Yes |
| 85 | GARZA | 20+ Yrs | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 86 | GILLESPIE | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 87 | GLASSCOCK | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 88 | GOLIAD | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 89 | GONZALES | 2 Yrs | Applicant | N/A | N/A | N/A | N/A | N/A |
| 90 | GRAY | Indefinitely | Disabled Person | Yes | 2 Yrs | Indefinitely | Disabled Person / Address / Placard Number(s) | Yes |
| 91 | GRAYSON | N/A | N/A | Yes | 5+ Yrs | No Retention | Disabled Person / Placard Number(s) / Address / SSN | Yes |
| 92 | GREGG | 4 Yrs | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 93 | GRIMES | 15 Yrs (1993) | Disabled Person / Placard Number(s) | N/A | N/A | N/A | N/A | N/A |
| 94 | GUADALUPE | N/A | N/A | Yes | 10 Yrs | No Retention | Disabled Person | NO |
| 95 | HALE | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 96 | HALL | 10+ Yrs (1998) | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 97 | HAMILTON | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |

| No. | Name | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 98 | **HANSFORD** | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 99 | **HARDEMAN** | 5 Yrs (2003) | Disabled Person (by year) | N/A | N/A | N/A | N/A | N/A |
| 100 | **HARDIN** | Indefinitely | Disabled Person | N/A | N/A | N/A | | N/A |
| 101 | **HARRIS** | N/A | N/A | Yes | 20 Yrs | 8 Yrs | Disabled Person Address Placard Number(s) DL / ID | Yes |
| 102 | **HARRISON** | Indefinitely | Disabled Person | N/A | N/A | N/A | | N/A |
| 103 | **HARTLEY** | Indefinitely | Disabled Person | N/A | N/A | N/A | | N/A |
| 104 | **HASKELL** | Indefinitely | Disabled Person | N/A | N/A | N/A | | N/A |
| 105 | **HAYS** | N/A | N/A | Yes | 1 Yr (2007) | 2 Yrs | Applicant Address Number(s) | Placard |
| 106 | **HEMPHILL** | 7+ Yrs (2001) | Year of Expiration | N/A | N/A | N/A | | N/A |
| 107 | **HENDERSON** | Indefinitely | Disabled Person | N/A | N/A | N/A | | N/A |
| 108 | **HIDALGO** | N/A | N/A | Yes | 10 Yrs (1998) | 10 Yrs (1998) | Applicant Address Number(s) Date Issued | Placard DL / ID  Yes |
| 109 | HILL | Indefinitely | Not Sorted | N/A | N/A | N/A | N/A | N/A |
| 110 | **HOCKLEY** | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 111 | **HOOD** | 10 Yrs | Disabled Person | N/A | N/A | N/A | N/A | N/A |

| | | | | | | | Placard | |
|---|---|---|---|---|---|---|---|---|
| 112 | HOPKINS | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 113 | HOUSTON | 10 Yrs (1998) | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 114 | HOWARD | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 115 | HUDSPETH | 12 Yrs (1996) | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 116 | HUNT | 8+ Yrs | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 117 | HUTCHINSON | 6+ Yrs | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 118 | IRION | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 119 | JACK | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 120 | JACKSON | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 121 | JASPER | 10+ Yrs | Disabled Person | Yes | 10+ Yrs | 10+ Yrs | Disabled Name Applicant Address Number(s) | Yes |
| 122 | JEFF DAVIS | 10+ Yrs | Applicant | N/A | N/A | N/A | N/A | N/A |
| 123 | JEFFERSON | N/A | N/A | Yes | 5 Yrs | 19- Yrs (89-90) | Disabled Name Placard Number(s) | Yes |
| 124 | JIM HOGG | 10 Yrs (1998) | Date Issued | N/A | N/A | N/A | N/A | N/A |
| 125 | JIM WELLS | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 126 | JOHNSON | 9 Yrs (1999) | Date Issued | N/A | N/A | N/A | N/A | N/A |
| 127 | JONES | Indefinitely | Applicant | N/A | N/A | N/A | N/A | N/A |

| # | County | | | | | Disabled Name Placard Number(s) Date Issued | | |
|---|---|---|---|---|---|---|---|---|
| 128 | KARNES | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 129 | KAUFMAN | N/A | N/A | Yes | 10 Yrs (97-98) | 10 Yrs (97-98) | N/A | Yes |
| 130 | KENDALL | 8+ Yrs | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 131 | KENEDY | 11 Yrs (1997) | Date Issued | N/A | N/A | N/A | N/A | N/A |
| 132 | KENT | 18 Yrs (2000) | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 133 | KERR | 20+ Yrs | Applicant | N/A | N/A | N/A | N/A | N/A |
| 134 | KIMBLE | Indefinitely | Date Issued | N/A | N/A | N/A | N/A | N/A |
| 135 | KING | 2 Yrs | Date Issued | N/A | N/A | N/A | N/A | N/A |
| 136 | KINNEY | 20+ Yrs | Applicant | N/A | N/A | N/A | N/A | N/A |
| 137 | KLEBERG | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 138 | KNOX | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 139 | LAMAR | Until Expiration | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 140 | LAMB | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 141 | LAMPASAS | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 142 | LA SALLE | 4 Yrs | Date Issued | N/A | N/A | N/A | N/A | N/A |
| 143 | LAVACA | 3 Yrs (2005) | Applicant | N/A | N/A | N/A | N/A | N/A |
| 144 | LEE | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 145 | LEON | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |

| County | Date Issued | Disabled Name / Applicant | License | Placard Date | Issued | Disabled Person Address Number(s) Plate Number DL / ID | License / Placard |
|---|---|---|---|---|---|---|---|
| 146 LIBERTY | N/A | N/A | Yes | 14+ Yrs (1994) | Indefinitely | Disabled Person | Yes |
| 147 LIMESTONE | N/A | N/A | Yes | 8 Yrs | Indefinitely | Disabled Person | Yes |
| 148 LIPSCOMB | 8+ Yrs | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 149 LIVE OAK | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 150 LLANO | 5 Yrs | Applicant | N/A | N/A | N/A | N/A | N/A |
| 151 LOVING | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 152 LUBBOCK | N/A | N/A | Yes | 10+ Yrs (1997) | 4 Yrs | Disabled Name Applicant Address Number(s) Issued | Yes |
| 153 LYNN | N/A | N/A | Yes | 2 Yrs | Indefinitely | Disabled Person Address Number(s) Plate Number DL / ID | Yes |
| 154 MADISON | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 155 MARION | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 156 MARTIN | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 157 MASON | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 158 MATAGORDA | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |

| # | | Disabled Name | Applicant Address Number(s) | Placard DL/ID | 10 Yrs | 5 Yrs | Disabled Person Address Placard(s) DL/ID Date Issued | Placard DL/ID |
|---|---|---|---|---|---|---|---|---|
| 159 | MAVERICK | 10 Yrs | Applicant | Yes | 10 Yrs | | | Yes |
| 160 | McCULLOCH | Indefinitely | Disabled Person | N/A | N/A | N/A | | N/A |
| 161 | McLENNAN | Indefinitely | Not Sorted | N/A | N/A | N/A | | N/A |
| 162 | McMULLEN | Indefinitely | Disabled Person | N/A | N/A | N/A | | N/A |
| 163 | MEDINA | 15+ Yrs | Applicant | N/A | N/A | N/A | | N/A |
| 164 | MENARD | Indefinitely | Date Issued Issued | N/A | N/A | N/A | | N/A |
| 165 | MIDLAND | N/A | N/A | Yes | Indefinitely | Indefinitely | Disabled Person Address Placard(s) DL/ID Date Issued | Yes |
| 166 | MILAM | Do Not Retain - Returned to Cust. | | | | | | |
| 167 | MILLS | Indefinitely | Disabled Person | N/A | N/A | N/A | | N/A |
| 168 | MITCHELL | Indefinitely | Disabled Person | N/A | N/A | N/A | | N/A |
| 169 | MONTAGUE | Indefinitely | Disabled Person | N/A | N/A | N/A | Disabled Person | N/A |
| 170 | MONTGOMERY | N/A | N/A | Yes | 10 Yrs (1998) | 13+ Yrs (1995) | Disabled Person | Yes |
| 171 | MOORE | N/A | N/A | Yes | Indefinitely | Indefinitely | Disabled Person License Plate Number Vehicle Info | Yes |

| # | County | | | | | | |
|---|---|---|---|---|---|---|---|
| 172 | MORRIS | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 173 | MOTLEY | 4 Yrs | Disabled Person Placard Number(s) | N/A | N/A | N/A | N/A |
| 174 | NACOGDOCHES | N/A | N/A | Yes | Indefinitely | Indefinitely — Disabled Person Address Placard(s) | Yes |
| 175 | NAVARRO | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 176 | NEWTON | 6 Yrs (fire) | No Order | N/A | N/A | N/A | N/A |
| 177 | NOLAN | Indefinitely | Applicant | N/A | N/A | N/A | N/A |
| 178 | NUECES | N/A | N/A | Yes | 10 yrs | Indefinitely — Disabled Person Address Placard(s) | Yes |
| 179 | OCHILTREE | 10+ Yrs (1998) | Disabled Person | N/A | N/A | N/A | N/A |
| 180 | OLDHAM | Indefinitely | Disabled Person | Yes | 2 Yrs | Indefinitely — Disabled Person Placard(s) of Issuance — Month | Yes |
| 181 | ORANGE | 10+ Yrs | Disabled Person | Yes | 3 Yrs (2005) | 10+ Yrs — Disabled Person Address Placard(s) DL # Date Issued License Plate Number | Yes |
| 182 | PALO PINTO | 15/20 Yrs | Disabled Person | N/A | N/A | N/A | N/A |
| 183 | PANOLA | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 184 | PARKER | 10/20 Yrs | Disabled Person | N/A | N/A | N/A | N/A |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 185 | PARMER | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 186 | PECOS | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 187 | POLK | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 188 | POTTER | 8+ Yrs (2000) | Disabled Person | Yes | 9 Yrs (1999) | 8+ Yrs (2000) | Disabled Person Placard(s) DL / ID | N/A |
| 189 | PRESIDIO | 14+ Yrs | Disabled Person Placard Number(s) | N/A | N/A | N/A | N/A | N/A |
| 190 | RAINS | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 191 | RANDALL | 2 Yrs | Disabled Person | Yes | 2 Yrs | 2 Yrs | Disabled Person Placard(s) License Plate Number DL / ID Date Issued Office of Issuance | Yes |
| 192 | REAGAN | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 193 | REAL | 3+ Yrs | Applicant | N/A | N/A | N/A | N/A | N/A |
| 194 | RED RIVER | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 195 | REEVES | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 196 | REFUGIO | N/A | N/A | Yes | 20 - 25 Yrs (1980s) | Indefinitely | Disabled Person Address Placard(s) License Plate Number | Yes |
| 197 | ROBERTS | 10 Yrs | Disabled Person | N/A | N/A | N/A | N/A | N/A |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 198 | ROBERTSON | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 199 | ROCKWALL | 10 Yrs | Disabled Person | N/A | N/A | N/A | N/A |
| 200 | RUNNELS | Indefinitely | Applicant | N/A | N/A | N/A | N/A |
| 201 | RUSK | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 202 | SABINE | 15+ yrs (1992) | Disabled Person | N/A | N/A | N/A | N/A |
| 203 | SAN AUGUSTINE | 13 Yrs | Disabled Person | N/A | N/A | N/A | N/A |
| 204 | SAN JACINTO | 18+ Yrs (1990) | Disabled Person | N/A | N/A | N/A | N/A |
| 205 | SAN PATRICIO | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 206 | SAN SABA | Indefinitely | Not Sorted | N/A | N/A | N/A | N/A |
| 207 | SCHLEICHER | 5 Yrs | Applicant | N/A | N/A | N/A | N/A |
| 208 | SCURRY | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 209 | SHACKELFORD | 10 Yrs | Applicant | N/A | N/A | N/A | N/A |
| 210 | SHELBY | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 211 | SHERMAN | Indefinitely | Disabled Person | Yes | Indefinitely | Indefinitely | Disabled Person Placard Number(s) Current & Previous | Yes |
| 212 | SMITH | N/A | N/A | Yes | Indefinitely | Indefinitely | Applicant Placard Number(s) | Yes |
| 213 | SOMERVELL | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |

| No. | County | | | | | | |
|---|---|---|---|---|---|---|---|
| 214 | STARR | N/A | N/A | Yes | 6 Yrs (2002) | Indefinitely | Disabled Person / Address / Placard Number(s) / DL/ID | Yes |
| 215 | STEPHENS | Indefinitely | Applicant | N/A | N/A | N/A | N/A | N/A |
| 216 | STERLING | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 217 | STONEWALL | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 218 | SUTTON | Indefinitely | Applicant | N/A | N/A | N/A | N/A | N/A |
| 219 | SWISHER | Indefinitely | Disabled Person | Yes | Indefinitely | Indefinitely | Disabled Person / Address | Yes |
| 220 | TARRANT | N/A | N/A | Yes | 10+ Yrs | 10+ Yrs | Application Date Issued  Yes | Yes |
| 221 | TAYLOR | Indefinitely | Applicant | N/A | N/A | N/A | N/A | N/A |
| 222 | TERRELL | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 223 | TERRY | N/A | N/A | Yes | 7 Months | Indefinitely | Disabled Person / Applicant / Address / License Plate Number / Placard(s) / DL/ID | N/A |
| 224 | THROCKMORTON | 6 Yrs (2002) | Date Issued | N/A | N/A | N/A | N/A | N/A |
| 225 | TITUS | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 226 | TOM GREEN | Indefinitely | Applicant | N/A | N/A | N/A | N/A | N/A |

| # | County | | | | Permanent File | Indefinitely | Disabled Person / Applicant / Address / Placard(s) / License Plate Number | Don't Know |
|---|--------|---|---|---|---|---|---|---|
| 227 | TRAVIS | N/A | N/A | Yes | | | | (shaded) |
| 228 | TRINITY | 10+ Yrs (1997) | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 229 | TYLER | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 230 | UPSHUR | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 231 | UPTON | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 232 | UVALDE | 10+ Yrs | Applicant | N/A | N/A | N/A | N/A | N/A |
| 233 | VAL VERDE | 17+ Yrs | Applicant | N/A | N/A | N/A | N/A | N/A |
| 234 | VAN ZANDT | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 235 | VICTORIA | Indefinitely | Disabled Person Placard | N/A | N/A | N/A | N/A | N/A |
| 236 | WALKER | 13+ Yrs (1996) | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 237 | WALLER | 4 Yrs | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 238 | WARD | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A | N/A |
| 239 | WASHINGTON | N/A | N/A | Yes | Yrs & Yrs | Do Not Retain | Disabled Person VTR-214 Scanned | Yes |
| 240 | WEBB | N/A | N/A | Yes | 10 yrs | 10 Yrs | Disabled Person Address Placard Number(s) DL / ID | Yes |

| # | County | | | | | | |
|---|---|---|---|---|---|---|---|
| 241 | WHARTON | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 242 | WHEELER | 5 Yrs (2003) | Disabled Person | N/A | N/A | N/A | N/A |
| 243 | WICHITA | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 244 | WILBARGER | Indefinitely | Disabled Person | Yes | 4 Yrs | Excel (?) | Yes |
| 245 | WILLACY | Until Deceased | Applicant | N/A | N/A | N/A | N/A |
| 246 | WILLIAMSON | Indefinitely | Disabled Person | Yes | Indefinitely | Indefinitely | Disabled Person Applicant Address Placard Number(s) Image Copy of App | Yes |
| 247 | WILSON | 2 Yrs | Date Issued | N/A | N/A | | N/A | N/A |
| 248 | WINKLER | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 249 | WISE | 8+ Yrs | Disabled Person | N/A | N/A | N/A | N/A |
| 250 | WOOD | 10 Yrs. | Disabled Person | N/A | N/A | N/A | N/A |
| 251 | YOAKUM | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 252 | YOUNG | Indefinitely | Disabled Person | N/A | N/A | N/A | N/A |
| 253 | ZAPATA | Until Deceased | Applicant | N/A | N/A | N/A | N/A |
| 254 | ZAVALA | 13 Yrs | Placard Number(s) | N/A | N/A | N/A | N/A |

* Column "C" reflects the retention period (if any) of the VTR-214's for counties that maintain a manual process (no database or in some cases a dual system).

** Column "G" reflects the retention period of the VTR-214s for counties that maintain primarily an electronic process.

<u>LEGAL NOTICE</u>

# If you paid a fee for a blue parking placard for persons with permanent disabilities, you could get reimbursed from a class action settlement.

A settlement has been proposed in a class action lawsuit about the fees charged purchasers of blue parking placards for persons with permanent disabilities. The settlement will provide $20,200,816.17 to reimburse fees paid, to pay the costs and expenses of administration, and to pay the costs and expenses of litigation, excluding attorneys fees. If you qualify, you may send in a claim form to get reimbursed, or you can exclude yourself from the settlement, or you can object to the settlement. If you chose not to file a claim and do not exclude yourself, you will be considered a Class Member and the monies held for your reimbursement will constitute unclaimed funds, one-half of which shall be paid to organizations for the purpose of serving an indirect benefit to persons with disabilities with one-half amount being returned to the State of Texas.

The United States District Court for the Western District of Texas, Austin Division, authorized this notice. Before any money is paid for reimbursement, the Court will have a hearing to decide whether to approve the settlement.

### Who's Included?

You are a Class Member and could get reimbursed if you purchased a blue parking placard at any time between August 11, 1995 and July 7, 2008.

### What's this About?

The lawsuit claimed the State of Texas $5.00 fee for a blue parking placard utilized by persons with permanent disabilities violates federal law. On July 7, 2008 a Federal Judge decided the fee was illegal and directed the parties to meet to discuss reimbursement to Class Members. The parties met and developed the plan described in this Legal Notice.

### What Does the Settlement Provide?

The State of Texas will provide $20,200,816.17 to a Settlement Fund to be divided among all Class Members who send in a valid claim form. Your share of the fund will depend on the number of valid claim forms Class Members submit but will not exceed the amount you actually paid.

Representative Plaintiffs and Class Counsel believe reimbursement to Class Members will equal 85% to 100% of the money paid by Class Members. **Access www.texasplacardfees.com to view the Settlement Agreement and to file your claim electronically.**

### How Do You Ask For a Payment?

A detailed notice and claim form package contains everything you need. Just visit the website below to get one. To qualify and receive a reimbursement, you must send in a claim form. **Claim forms are due by _____ ____, 2009.**

### What Are Your Other Options?

If you do not want to be legally bound by the settlement, you must exclude yourself by _____ ____, 2009, or you won't be able to sue regarding the legal claims in this case. If you exclude yourself, you can't get reimbursed from this settlement. If you stay in the settlement, you may object to it by _____ ____, 2009. The Settlement Agreement available on the website explains how to exclude yourself or object.

The Court will hold a hearing in this case (*Meyers, et al. v. State of Texas, et al.*, Case No. A-00-CA-430-SS) on _____ ____, 2009 to consider whether to approve the settlement and to consider a request by attorneys representing all Class Members (Skelton & Woody, of Austin, Texas; Peterson & Myers, P.A., of Lakeland, Florida; and Robert G. Fegers, P.L., of Winter Haven, Florida) for up to $3,900,000.00 in attorneys' fees, for investigating the facts, litigating the case since 1997, and negotiating the settlement. The attorneys' fees will not reduce the Settlement Fund and will be paid separately by the State. You may ask to appear at the hearing, but you don't have to. For more information, visit www.texasplacardfees.com, or write to Parking Placard Settlement, Class Counsel, Skelton & Woody, Post Office Box 1609, Austin, Texas 78767-1609 or contact the Call Center at 1-866-814-5419.

EXHIBIT "B"

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARJORIE MEYERS, by Next Friend EDGAR C. BENZING, HELEN ELKIN, RUTH H. DAVIS, and PHILLIP GREENBERG, on behalf of themselves and all others similarly situated, | § § § § § | |
| | § | |
| Plaintiffs, | § § | |
| vs. | § § | Civil Action No. 00 CA 430 SS |
| STATE OF TEXAS, DEPARTMENT OF TRANSPORTATION, and AMADEO SAENZ, JR., in his capacity as Executive Director of the Texas Department of Transportation; | § § § § § | |
| | § | |
| Defendants | § | |

**NOTICE OF CLASS ACTION SETTLEMENT
REGARDING PARKING PLACARD**

**Records indicate you purchased a parking placard for persons with permanent disabilities.**

In 1997, a class action lawsuit was filed against the State of Texas alleging the State of Texas, *et al.*, ("State") violated the rights of persons with disabilities by charging a fee for the parking permits ("placards") needed by persons with permanent disabilities in order to use the accessible motor vehicle parking spaces reserved for persons with disabilities. The fee for Placards has been $5.00, renewable every four years. This lawsuit is pending in the United States District Court for the Western District of Texas, Austin Division, and styled *Meyers, et al. v. State of Texas, et al.*, Case No. A-00-CA-430-SS. Plaintiffs alleged the practice of charging fees for Placards violated the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. State denied the allegations. On July 7 2008 the Honorable Sam Sparks entered an Order ruling the Placard fee charge violates Section 504 of the Rehabilitation Act, ordering the State to "refrain from requiring payment from future applicants for placards allowing the use of parking spaces reserved for persons with disabilities." The Parties have agreed to settle the lawsuit and the Court has tentatively approved the settlement described herein.

The Parties propose to settle the lawsuit on the terms set forth in this notice. On or about July 7, 2008 State discontinued charging any fee for placards needed by persons with permanent disabilities. Pursuant to the "Settlement Agreement" the State will pay $20,200,816.17 to a Settlement Fund for reimbursement to placard purchasers, for costs and expenses of

EXHIBIT "C"

administration, including notice and reimbursement, and costs and expense of litigation. In addition, the Court will award Plaintiff a reasonable attorney fees not to exceed $3,900,000.00, which the State has agreed to pay to Plaintiffs' Class Counsel. The attorney fees will be paid by the State and will not come from the Settlement Fund. The entire Settlement Agreement is posted at the below referenced website.

If you agree with the terms of the settlement and you do not want your reimbursement, you need to do nothing further. To receive a reimbursement you must file a claim form and may be required to provide supporting documentation. Unclaimed funds will be distributed one-half to *Cy Pres* recipients to be utilized for projects which will indirectly serve to benefit persons with permanent disabilities and one-half to the State. Your agreement with the terms of the settlement will constitute a complete and full acceptance of the settlement and you will have no further rights regarding this claim. All purchasers of Placards purchased between August 11, 1995 through July 7, 2008 are entitled to be reimbursed based on the amount of Funds available in the Settlement Fund and the number of valid reimbursement claims filed by Class Members. Plaintiffs estimate sufficient funds will be available to reimburse claimants from 85% to 100% of fees paid without interest. Class Counsel and Representative Plaintiffs believe the settlement is fair, reasonable and adequate and the expense of further proceedings will far exceed the value of any additional relief obtained. However, if you do not agree to this class action settlement you have the option to pursue all of your rights, including, a full refund with interest, costs, and attorneys' fees, independently by excluding yourself from the plaintiff class. Federal District Court Judge Sam Sparks will hold a hearing to consider the fairness of this settlement ("Fairness Hearing") and to determine whether the settlement will be approved as final, at _____ a.m. on _____ ____, 2009, courtroom _____, _____, Austin, Texas. If the Court approves the settlement, in its entirety, or substantially, there will be no further notice to class members. If you wish to be excluded from the settlement and the plaintiff class you must submit a signed written statement to Plaintiff's Class Counsel at the address below and the Clerk of the court at _____, Austin, Texas, five (5) days prior to the Fairness Hearing. As a member of the plaintiff class you have a right to object to this settlement and must file an objection to the settlement, setting forth the basis of your objection, with the Clerk of the Court on or before five (5) days prior to the Fairness Hearing and appear at the fairness hearing. Any Class Member that objects may be required, as a matter of law, to appear in the lawsuit as an intervener to protect said member's right to appeal.

A claim can be filed electronically or by mail. To secure a claim form or to file a claim electronically go to **www.texasplacardfees.com**. A call center is available at 1-866-814-5419 to answer questions and to provide claim forms.

At this time, the parking certificate program will continue unchanged except that purchasers will no longer be charged for placards.

Any questions about the lawsuit should be directed, in writing, to plaintiff's counsel: Attn: Class Action Litigation Department, Skelton & Woody, Post Office Box 1609, Austin, Texas 78767.



July 17, 2009

Mr. Robert Fegers
Counsel
Fegers Law, LLC

**Re: DIVDAT's role as Administrator of Texas Settlement** Civil Action
No. 00 CA 430 SS

Dear Mr. Fegers

DIVDAT is pleased to present our proposal to Fegers Law for the
fulfillment of the tenets of the civil law case referenced above. DIVDAT
has experience fulfilling similar applications in the past and our state of
the art facilities, as well as our core competency as a data processing
facility makes us the right choice for this application.   The following
outlines a profile of our company and then a special review of our
solutions to confirm our expertise in each area that is outlined in the
settlement agreement.

Thank you in advance for your consideration.

Respectfully,


David McKenna
Vice President, Business Development


EXHIBIT "D"



## A. General Information
### 1. Company Profile

DIVDAT is a business process outsourcing (BPO) company with more than 38 years of experience. The company was originally founded in 1971 as a data processing company, performing services for the financial units of several major automotive companies. The company transitioned into printing and mailing services shortly after it's founding due to the increased demand for automated document production in financial services and other industries.

DIVDAT has since grown into a $65 + million company and currently operates two full production operations (Ferndale, Michigan and Las Vegas, Nevada) and maintains offices in several states including California, Missouri and Florida. DIVDAT routinely produces 15 million sensitive financial documents every month for clients across many industries. Documents that we generate and distribute by mail and via the Internet include: billing statements, invoices, collection letters, insurance documents, brokerage margin calls and trade confirmations, credit reports, financial letters, <u>corporate checks</u>, and a variety of other applications.

To represent the overall capabilities of DIVDAT as a data process and development organization and in response to client requests, DIVDAT began development of a full online bill presentment and payment system that could be fully integrated with the traditional printing and mailing based systems. Today, DIVDAT has two fully developed and operational systems: billOnline for Electronic Bill Presentment and Payment, and CashLINC™ Vault for online document archiving. The combination of these web enabled systems along with data processing, traditional printing and mailing services, Broadcast Messaging, IVR and Kiosks payment options, DiversiTrack using Planet Codes, Services for Undeliverable mail, and much more, gives DIVDAT one of the broadest ranges in communications capabilities in the industry. We can incorporate several processes to enhance response and payment from your customers, or take advantage of CashLINC™, our signature product which incorporates our entire portfolio of capabilities which will streamline the notification and receivables cycle, and provides the highest level of effectiveness for your business process outsourcing needs. Organizations such as BMW Financial, Nestle Waters, Hewlett Packard, Veolia Waste Management, Chrysler Financial, and AAA trust in DIVDAT to produce millions of documents for them every month.

### 2. Printing and Mailing

Traditional printing and mailing services provided by DIVDAT can be broken-down into several stages. These stages can and will be customized to fulfill your specific requirements or needs. The following is a general description of each:

- **File Transfer and Acknowledgment:** DIVDAT supports a variety of file transfer methods and receives files 24x7. The most common file transfer method is FTP with encryption for added security. Upon receipt, the files



are automatically logged into our File Tracking System and the status is displayed on DIVDAT's eServices website for the client's use. A file alert email is also generated noting the date and time the file was received, file name, file type, and size.

- **Pre-mailing Address Scrubbing and/or Address Verification:** Part of DIVDAT's normal process is to run the print file through its postal standardization software, add delivery point bar codes where possible and sort for postal discounts. In addition to these normal processes, there is a range of other available services, including minimizing page counts, accommodating multiple statements formats based on customer type, house-holding of statements (grouping by name and mailing address into a single outgoing envelope), NCOA and ACS. Virtually any process that is available in the industry can be provided by DIVDAT.

- **Custom Data Processing:** DIVDAT applies custom business logic to accommodate our client's specific needs. Our programmers will work directly with you and your IT staff to define the specific requirements for your application. Additionally, we work with and have experience with data in virtually any format (Data Files: Fixed width, Delimited (CSV), XML, etc. and Print Files: Print Image, PDF, PCL, Post Script, AFP etc.) This flexibility serves to ensure that your IT staff is free to concentrate on your core business. Utilizing our extensive application experience in conjunction with the latest computer technology, we can: deliver custom applications, maintain databases, maintain tables for customer-defined messaging, merge & purge files, generate delivery point Postnet barcodes, perform calculations, identify documents for Internet distribution, handle secure payment transactions via the Internet with automatic A/R updates, offer Internet-based reporting and tracking.

- **Printing, Folding & Inserting, Mail Preparation:** DIVDAT will receive the files, automatically process for address standardization and postal presorting, send the process report and post it to the File Tracker, print, fold, insert and seal, affix the best available postage to the envelope, and deliver the mail pieces to the USPS within 24 hours. DIVDAT delivers the completed mail to the USPS twice daily. The mail is sorted, placed on skids, wrapped and labeled for post office automation.

- **Variable language capabilities:** when required, DIVDAT can provide printed documents for individuals who do not have English as their primary or first language.

### 3.  Production & Mail Room

DIVDAT routinely produces between 15 and 18 million sensitive financial documents every month for our clients across many industries. Documents that we generate and distribute by mail and via the Internet include: billing statements, invoices, collection letters, insurance documents, brokerage margin



calls and trade confirmations, credit reports, financial letters, corporate checks and a variety of other applications.

The company's operations run 24x7 allowing for the most efficient use of our facilities and equipment. The main office and customer service hours are Monday - Friday 8:00 AM - 6:00 PM EST. DIVDAT provides an after hours contact phone number in case of emergencies.

- Our production departments utilize a variety of Xerox cut sheet and OCE continuous laser printers. With these printers, DIVDAT can provide black and white, spot color, full color, simplex, duplex, and MICR printing.

- Our Pitney Bowes and Bell and Howell mail room equipment has intelligent inserting capabilities and each has 6 pockets available for this purpose. Intelligent inserting is accomplished using a variety of techniques and OMR marks are used for this purpose. The most common method is based upon selection codes included in the data file by the client. Alternatively, DIVDAT can use selection rules programmed by our engineers according to client specification and based upon data fields in the file. These selection processes usually include default messages, priority selection and postage weight considerations. Criteria such as zip codes, service type, cycle and route are common indicators for intelligently selecting inserts. This technology is also used for your customers enrolled in Auto-Pay so they do not receive an unnecessary return envelope. A Mail Master is on hand for the inserting of larger packages and the company has a substantial hand fulfillment division.

- DIVDAT has the ability to produce any additional inserts that you require. From black & white to full color, we have the resources to provide a variety of different print jobs.

### CASS Certification & Postal Discounts

DIVDAT utilizes CASS certified postal sorting software. Your data is presorted electronically prior to printing, which provides the maximum possible postal discounts while optimizing throughput. DIVDAT achieves 95% qualification with electronic presorting. With the client's permission, the additional 5% are sent to a pre-sort house (co-mingling house: MLOCR) to achieve the maximum postage qualification. Alternatively, we can mail those pieces with full postage rates for non-presorted mail.

DIVDAT provides all of our clients with actual postage rates. We do not make a profit on postage by charging the client the highest postage rate and in fact sending the mail at the lowest rate.

### 4. Reporting & Tracking

**Standard Reports:**



Two standard reports are sent to the client for each data file. A File Alert is sent as a notification of a successfully received data file. Process Reports are provided to the client as a confirmation of a successfully received and processed file. At the basic level, this report contains file name, file size, date, time received and the total number of records processed and mailed. These reports may be customized to provide you with custom information and is available via email, fax and the File Tracker.

**File Tracker:**
DIVDAT's File Tracker is a web-based tracking system that details the status of your data files in real time. All files that have been transmitted to DIVDAT are logged into the File Tracker. This system is used internally for quality control purposes and by clients as confirmation of receipt and processing of files. This system retains a list of the processing of all files by year, month, file name, file size, date, time received and the total number of records processed and mailed.

## 5.  Additional Mailing Services

### National Change of Address Service (NCOA)

NCOA service reduces your costs for non-deliverable mail. DIVDAT validates your addresses through the NCOA database, if a change of address has been made within the past 48 months; DIVDAT will print the new address directly on the document and has the ability to delete undeliverable or duplicate addresses from the file before printing. DIVDAT will then create a file containing all changes and place the file on our FTP site for your retrieval. The client then has control to update its database with the new addresses.

### Address Change Service (ACS)

For documents that are determined by the USPS as having a new forwarding address, using ACS the USPS will automatically forward the documents to the new address. DIVDAT then captures the address data and places it on our FTP site for your retrieval. The client then has control to update its database with the new addresses. You only pay for reported changes.

### Return Mail Management (RMM)

RMM directs undeliverable mail (via the return address) to a post office box managed by DIVDAT. Invalid addresses are then scanned into our system using 2D barcode. DIVDAT provides the client with an electronic file for updating the customer database. The 2D barcode is tied to a back-end relational database. A unique identifier is included within the 2D barcode that allows each customer and document type to be identified. We also have the ability to include the reason code explaining why the document was returned. This service is most beneficial for customers with high volumes of returned mail.



## 6. Data Security

DIVDAT's data security standards include compliance with the Payment Card Industry (PCI), Health Information Protection (HIPAA) and National Institutes of Technology (NIST).

DIVDAT has established a comprehensive and robust **Information Security Program** in compliance with **NIST Special Publication 800-53** and all related NIST, National Institute of Standards and Technology, standards and publications. In May 2007, DIVDAT completed a formal certification of its NIST compliance, conducted by the Federal Government and DIVDAT was given the Authority to Operate. <u>DIVDAT is the only printing and mailing service provider in the world authorized by the Federal Government to process sensitive Federal tax information.</u>

DIVDAT's Information Security Program comprises many elements; highlights include:

- A **Risk Management Protocol** that includes periodic risk assessments of the magnitude of harm that could result from the unauthorized access, use, disclosure, interruption, change to, or destruction of DIVDAT or client information and information assets.
- Regularly updated and rigorously enforced **Personnel, Physical and Information Security Policies, Standards and Procedures** that are based on risk assessments and that cost-effectively mitigate security risks to DIVDAT and DIVDAT's clients
- An ongoing **Security Awareness Training Program** to educate all DIVDAT employees, contractors and other users of DIVDAT information resources about DIVDAT's information security practices  and policies and their individual security responsibilities.  In addition to the mandatory security awareness training that all personnel receive at new hire orientation and at least yearly thereafter, DIVDAT holds department- and function-specific security training sessions, discussion forums and events, to ensure that information security is an integral part of DIVDAT corporate culture
- Formal reviews of information security program effectiveness:
    - o Recurring self-audits that incorporate a formal Certification and Accreditation Process
    - o Regular 3rd Party Security Assessments and penetration testing
    - o A formal policy review process carried out by DIVDAT's Policy Board
    - o A master Plan of Action and Milestones (POAM) that is managed by DIVDAT's Information Security Team.
- A comprehensive **Business Continuity Program** to ensure continuity of operations, and for detecting, reporting, and appropriately responding to security incidents.  DIVDAT's program includes:
    - o An always-available, DIVDAT-owned Alternate Processing Center that mirrors the processing capabilities of DIVDAT's primary processing center
    - o Regularly updated Operational and IT Disaster Recovery Plans



> o  On site diesel powered generator to ensure consistent "up time" for printers and servers.

A formally documented and regularly tested Incident Response Plan managed by DIVDAT's Incident Response Command Team.  The plan provides instructions for responding to a wide variety of information security incidents, as well as natural and man-made disasters.

DIVDAT's web based solutions are hosted at a tier 1 level hosting facility with SAS70 Compliance.  We have several locations with full redundancy and backups. We purchase and deploy industry standard rack-mounted blade servers that have full UPS backup as well as threshold notifications for proactive technical support. All client data is stored in an encrypted format.

Web based applications are secured using 128 byte SSL encryption.  DIVDAT adheres to Internet Protocol Security [IPSec] general best practices when coding any web-based application.

## 7.  Physical Security

Physical security measures in place to protect client data from modification, disclosure, and destruction.

> o  Default passwords for hardware and software have been changed.
> o  We have a security system with electronic access control systems to control access to printers, data center, environmental support systems, and data media storage area.
> o  Visitors must be accompanied by an escort while in production areas and may be required to sign a security log and show ID.
> o  Our facilities are protected with: Intrusion Detection Alarm System, Smoke Detection Systems, and Fire Detection Systems.



## B. Project Overview

The State of Texas Civil Action No. 00 CA 430 SS will be concisely and carefully administered by DIVDAT. The administration of this case involves but is not limited to the following:

- ❏ Identifying members of the class through the data files provided by the various counties within the state
- ❏ Making a fair and reasonable effort of notifying said members via letter, web site and local newspaper advertisements
- ❏ Gathering responses to the settlement claim and distributing official claimant information via USPS
- ❏ Gathering and validating claims
- ❏ Issuing denial letters if applicable
- ❏ Issuing claim checks to class members
- ❏ Tracking and reporting of payments and denials to the State

As noted in the company summary above, DIVDAT is perfectly positioned to effectively and efficiently manage the settlement of the case. DIVDAT understands the importance of adhering to the tenets of the settlement.

## C. Pricing Summary

The pricing summary will be comprised of two sections. The first will be an inclusive summary package, that has a basic volume assumption and the components of the summary will be outlined. The second will be an itemized pricing list for components of the settlement that require quantification on a "per piece" basis.

### 1. Bundled Package

**Claim notice** – per the description in the settlement, DIVDAT will prepare a printed notice on 8.5 x 11 paper stock. The form will be professionally laser printed; machine folded and inserted into a #10 business envelope and based on data received by the counties, will be mailed to class members. In addition to the printing and mailing, DIVDAT will perform address standardization for address quality and National Change of Address software to insure delivery point validation. To obtain the typical mailing efficiency for which DIVDAT has gained a reputation, the following processes will be adhered to:

- • *OBTAIN FILES FROM TX COUNTIES*
    Network Administration - Obtain the files for 54 counties using Secure File transfer Protocol:
    - ▪ Setup the SFTP credentials and get to client
    - ▪ Field any questions the county personnel may have regarding public keys, encryption, tech support, etc.
    - ▪ Verify that the files arrived and are usable



> ▪ Setup processing file alerts

- *STANDARDIZE FILES TO ONE FILE FORMAT* - Software Developer-Convert the various files obtained from counties to a standard record layout that can be processed.

- *PRINT APPLICATION DEVELOPMENT* - Software Developer - Design and develop print application to process files [to include NCOA, house-holding, limited business rules, processing reports, etc.] to output a file that can be used to print.

**Web Site** – with more than 10 years of web site development under foot, DIVDAT is more than suitably positioned to build a secure web site to which class members can visit and see the settlement information and download the appropriate claim forms. Forms should be filled out electronically and then sent to a local printer and then mailed into DIVDAT for validating, processing and check submittal. The web site will be designed and deployed with attention given to the following:
A Technical Business Analyst will gather requirements, document functional specifications for developer, and test website for Internet Explorer version 7.0 and up ONLY.
A Software Developer will Design and develop a Website that will service the following 3 parties:
1. Claimant
2. Call Center [assisting non-Internet claimants in entering the info via telephone directly into website]. A copy of the Claim Form will be mailed to Claimant for signature.
3. Data Direction or Worker who will scan barcode on Received Claim Forms and/or manually input received claim form info
   **Assumptions:**
1. The Claim Form will be a form [not PDF template] on the website that the Claimant can populate for the purpose of printing and mailing to DIVDAT.
2. Claim Form will have a unique identifier readable by both eye and scan able barcode.
3. Data will be stored in database
4. Website can display other documents
5. Call Center claim forms will be batched and outputted to a file and processed by print application [mailed to claimant for signature]
6. Website will record/save all claim forms.
7. Business logic to include prevention of duplicate claimants, allow for reprints, identify required fields, etc.
8. Admin logins will be necessary for Call Center and Data Direction users
9. Reports for tracking and auditing

**Newspaper Ads** – DIVDAT will solicit and submit to specific TX newspaper companies an announcement containing the case and settlement information. This ad will contain all the required settlement notification and claim guidelines and shall include, to the extent possible, not less than the following:
- Amarillo Globe-News (Amarillo, Texas)
- Austin American-Statesman (Austin, Texas)
- Austin Chronicle (Austin, Texas)



- Del Rio News-Herald (Corpus Christi, Texas)
- Corsicana Daily Sun (Dallas-Ft. Worth, Texas)
- Denton Record-Chronicle (Dallas-Ft. Worth, Texas)
- Palestine Herald-Press (Dallas-Ft. Worth, Texas)
- El Paso Times (El Paso, Texas)
- El Nuevo Heraldo (Harlingen, Texas)
- McAllen Monitor (Harlingen, Texas)
- La Subasta Houston (Houston, Texas)
- Laredo Morning Times (Laredo, Texas)
- Lubbock Avalanche-Journal (Lubbock, Texas)
- Houston Chronicle (Houston, Texas)
- San Antonio Express-News (San Antonio, Texas)
- Fort Worth Star-Telegram (Fort Worth, Texas)
- Snyder Daily News (Lubbock, Texas)
- Midland Reporter-Telegram (Odessa-Midland, Texas)
- Herald Democrat (Sherman, Texas)
- Mt. Pleasant Daily Tribune (Mount Pleasant, Texas)
- Texarkana Gazette (Texarkana, Texas)
- Henderson Daily News Tyler-Longview, Texas)
- Jacksonville Daily Progress (Tyler-Longview, Texas)
- Eagle (Waco, Texas)
- Killeen Daily Herald (Waco, Texas)

**Insurance** - To secure DIVDAT's performance as Administrator, and to protect against malfeasance and misfeasance, DIVDAT shall, through Class Counsel, submit proof of errors and omissions insurance coverage in the amount of not less than $20,000,000.00.  The Representative Plaintiffs and Class Counsel shall be named as a loss payee of said policy in their capacity as class representatives.

**The Pricing for the Services listed above - $819,000.00**


2. *Itemized Pricing*

i.  **Call center program** – in order to facilitate those class members who do not have the where withal or the inclination to visit the web site to submit claim information, a toll free call center will be established for a 30 day period. The call center will have live attendants with Spanish and English speaking capabilities. These attendants will be available from 9 am to 5 pm CST, Monday through Friday.  Data gathered from the attendants will be batched to DIVDAT nightly in order for information to be validated and for claims to initiate payment. **$2.50 per call**

ii. **Print and mail claim form** – after the dispersing of the notices and following the prescribed period of time following the Fairness Hearing and the time allocated to class members, DIVDAT will mail a form to those class members that did not fill out the form on the web site, nor call the call center. **Claim form $.69 each (includes postage, data processing and all materials)**



iii. **Claim Form scanning and data capture** – all claim forms submitted to DIVDAT will be scanned and uploaded into a data base. **$.19 per claim form**

iv. **Print and mail claim check** – once a claim form has been submitted, DIVDAT will print and mail a check to the appropriate household. In the case where more than one class member resides at the same address, a house holding service will be performed in order to minimize costs associated with printing and mailing. Upon the completion of the period to file a claim, DIVDAT will review and consider all claims filed and prepare an electronic database of all claims filed and issue reimbursement checks to Class Members submitting valid claims. Said checks shall not exceed the amount each Class Member paid for Placards and in aggregate shall not exceed the amount in the Settlement Fund less administration costs and expenses and litigation costs and expenses. In the event the distribution results in a mathematical computation involving a fraction of a penny, then DIVDAT will round down to the closest penny unless Class Counsel, in writing, authorizes, otherwise. It is understood by DIVDAT that the check for reimbursement must be preapproved by the Banking institution holding the Settlement Fund ("Depository") and in a format acceptable to the Depository. Prior to commencement of Notice and distribution of funds, DIVDAT will provide Class Counsel, State counsel, and the Depository with a proof copy of the Notice and the reimbursement check for review. At a minimum the proof copy of the reimbursement check shall set forth a preprinted maximum value and an expiration date of not more than 30 days. If Class Counsel, State counsel, or Depository does not respond to the proof copy within 10 days of receipt, the proof copy submitted by DIVDAT will be deemed acceptable by the non-responding party. On a daily basis, DIVDAT will provide Depository a data source of information which indicates the number of the check issued, the name and address of the payee and the amount of the check for each check mailed on a given day. **$.71 per check (includes postage, data processing and all materials)**

v. **Print and mail denial letter** – DIVDAT realizes its role in the potential denial of any claim and we know that the denial of a claim must be reviewed by Class Counsel for consideration. If Class Counsel agrees with the DIVDAT's denial of the claim, a letter of denial must be sent to the putative Class Member submitting the claim, unless claimant has failed to provide an appropriate address. **$.46 per denial letter (includes postage, data processing and all materials)**

vi. **Additional insurance** – should an additional need for insurance manifest itself for any reason, DIVDAT will address costs at that time. TBD

*D. Recommended Banking Strategy*

**Bank Depository Concentration Risk Temporary Insurance Limits for Non-Interest-Bearing Deposit Transaction Accounts**



Recent distress in the financial markets and the failures of some prominent financial institutions last year has increased concern among depositors for the safety of their deposits. Concern has been especially high among businesses and municipalities that maintain significant deposits in banks to handle routine transactions such as payroll and payment of invoices.

To allay the public's concern for the safety of funds deposited in banks, Congress in October temporarily increased from $100,000 to $250,000 the maximum level of insurance for deposit accounts in banks insured by the Federal Deposit Insurance Corporation (FDIC). In addition, Congress temporarily authorized unlimited insurance on certain accounts that do not bear interest, known as non-interest-bearing deposit transaction accounts. Called the Transaction Account Guarantee (TAG) program, it also permitted banks to opt out of the unlimited coverage if they wished to avoid the related deposit insurance premiums.

A non-interest-bearing transaction account is one in which interest is neither accrued nor paid and on which the insured depository institution does not reserve the right to require advance notice of an intended withdrawal. The TAG program applies to any personal or business deposit account that does not earn interest - such as traditional demand deposit checking accounts - that allows for an unlimited number of deposits and withdrawals at any time. It also applies to Interest on Lawyers Trust Accounts (IOLTAs), functionally equivalent accounts, and NOW accounts with interest rates no higher than 0.50 percent. The guarantee applies only until December 31, 2009, and only at those financial institutions that chose to participate in the program and pay the related additional insurance premiums to the FDIC.

The FDIC recently published a list of 948 banks, which chose to opt out of the TAG program. To determine whether your bank elected not to participate in the TAG program, click here. If your bank opted out of the TAG program, your non-interest-bearing transaction accounts will still be covered by FDIC insurance, along with your other accounts at the bank, up to an aggregate amount of $250,000, the standard maximum deposit insurance amount.

Based on the foregoing settlement funds deposited in an appropriate non interest bearing account at a bank that has not opted out should be fully insured. Nevertheless, we recommend that funds be deposited with several banks to minimize the risk of potential delay associated with the processing of an FDIC claim should a bank fail even where fully insured.

One of the depository banks would be utilized as the disbursing bank. We recommend that two accounts would be maintained at the disbursing bank. One account would be a zero balance controlled disbursement account whereby advance notice of check clearing activity for each day would be provided as an additional fraud prevention step to positive pay reporting as required by the Settlement Agreement. A second general operating account would be utilized to accept transfers from alternate banks as well as provide for a daily transfer to the controlled disbursements account to cover each day's clearing activity.



Note: This quote is valid for 30 days from the date noted at the top of page one of this document.

Thank you for the opportunity to bid on this project.

Respectfully Submitted,


David McKenna
VP – Business Development
DIVDAT



**Bid Supplement**                                                    **August 13, 2009**

**Re: DIVDAT's role as Administrator of Texas Settlement** Civil Action No. 00 CA
430 SS

Pursuant to conversations related to the details of the initial bid offering, the
following items are to be included:

1. Call Center Costs – all costs related to the call center will not exceed
   **$75,000.00**
2. Initial Payment for Bundled Services – DIVDAT deems the following to be
   true:
   a. Postage estimate for initial mailing - $320,000.00
   b. 50% of balance of services - $249,500.00
      **Total initial payment - $569,500.00**
3. Potential Mailing Overrun – potentially the initial mailing may exceed the
   estimated volume of 800,000 records. Once all files are gathered and records
   are assessed, any volume of mail pieces exceeding 800,000 will incur a price
   of **$.69 per mail piece** of which the postage and 50% of the balance of the
   price for the "mailing overrun" is to be paid at the time of, and in addition to,
   the initial payment set forth above.

4. The balance due for items 2 and 3 above shall be paid within 10 business
   days of completion of the mailing or when mailing is confirmed as complete
   by Divdat.

5. Payment to Divdat for services related to mailing Refund checks, call center
   and other tasks due under the administrator's agreement shall be billed and
   paid at the commencement of work performed for said services.

Respectfully Submitted,

David McKenna



**Texas
Department
of Transportation**

### Information Resources Security Compliance
### and Confidentiality Agreement
### <u>Meyers</u>' Lawsuit 3rd Party Administrator

I understand that the Texas Department of Transportation ("TxDOT"), through the counties, collects and maintains confidential and privileged information and is permitting access to data containing confidential and privileged information in response to the <u>Meyer</u> court order.

I understand and agree that I will observe the standards of confidentiality that must be maintained as I exchange business and technical information and that unauthorized release of confidential information, or actions deemed negligent resulting in damages/loss of information resources[1], will result in termination of my contract and may also result in legal action.

I understand and agree that any and all information system password(s) or access procedure(s) I receive or devise for use with TxDOT's or the counties information systems are confidential and reserved for official state agency business only. I will not disclose to any unauthorized person(s)[2] any password(s) or access procedure(s) I am given or devise, and I will not post these procedure(s) or written password(s) where persons who are not authorized to use the system may view them.

Attempts to access and utilize TxDOT's or the counties' documents or information systems for other than their intended purposes may result in prosecution under the Computer Fraud and Abuse Act of 1986 as well as any other applicable statutes and regulations.

I understand and agree that I am responsible for all information system transactions performed as a result of access authorized by the use of my password(s) or procedure(s).

I agree not to attempt to circumvent information system security devices or procedures by using or attempting to use any transaction, software, files, or other resources that I am not authorized to use.

I understand that intentionally failing to observe these requirements or intentionally bypassing them may constitute a breach of information systems security as defined in the Texas Penal Code §33.02 and may result in immediate loss of information system access.

I agree to abide by the provisions of the *Texas Transportation Code*, Section 502.008, the federal *Driver's Privacy Protection Act (18 U.S.C. § 2721 et seq.)*, and the *Texas Motor Vehicle Records Disclosure Act (Texas Transportation Code, Chapter 730)*.

I acknowledge receipt of this agreement, understand its contents, and agree to abide by the terms set forth herein.

Additionally, I have been informed that questions regarding this agreement and/or issues related to the release or disclosure of confidential information should be directed to the director of TxDOT's Vehicles Titles and Registration Division.

_____          _____
        **Signature**                                   **Date**

_____
        **Printed Name**

**Original** to project manager for inclusion in the user's file.
**Copy** to be retained by security administrator for inclusion in user's security file.

1 Information resources include documents, computer systems, telephone systems, voicemail systems, fax systems, and regular mail systems as well as the procedures, equipment, and software that are designed, built, operated, and maintained to collect, record, process, store, retrieve, display, and transmit information, and associated personnel including consultants and contractors.

2 Unauthorized person(s) include anyone who is not bound by this written confidentiality agreement.

The Texas Department of Transportation maintains the information collected through this form. With few exceptions, you are entitled on request to be informed about the information that we collect about you. Under §§552.021 and 552.023 of the Texas Government Code, you also are entitled to receive and review the information. Under §559.004 of the Government Code, you are also entitled to have us correct information about you that is incorrect.

EXHIBIT "E"